UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TODD MAYES,

    Petitioner,

v.                                                  CASE NO. 8:14-cv-1859-T-36AEP

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## **O R D E R**

This matter comes before the Court on a petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by Florida state prisoner Todd Mayes ("Petitioner") (Dkt. 1). Respondent, the Secretary of the Florida Department of Corrections, filed a response (Dkt. 7), which is accompanied by the appendix record of Petitioner's state court proceedings (Dkt. 9)[1]. Petitioner did not file a reply to the response and the time frame for doing so has expired. (*See* Dkt. 4, p. 4.)

### **Procedural History**

Petitioner challenges a judgment of conviction and sentence arising out of the Thirteenth Judicial Circuit Court, in and for Hillsborough County, Florida. He was convicted of burglary of a dwelling with assault or battery, three counts of sexual battery, attempted felony murder and false imprisonment. (Ex. 042, R. 75-92). He filed a notice of appeal on March 2, 2004. (Ex. 001). Defense counsel filed an initial <u>Anders</u>[2] brief with the Second District Court of Appeal on or about

---

[1] All exhibits cited throughout this Order can be found in the appendix record of Petitioner's state court proceedings, docket entry 9.

[2] *Anders v. California*, 386 U.S. 738 (1967).

September 28, 2004. (Ex. 002). On December 20, 2004, Petitioner filed his *pro se* initial brief. (Ex. 003). The State filed its <u>Anders</u> answer brief on February 2, 2005. (Ex. 004). On May 25, 2005, the Second District Court of Appeal affirmed *per curiam*. (Ex. 005). The mandate issued on June 21, 2005. (Ex. 006).

On March 20, 2006, Petitioner filed his motion to correct illegal sentence, pursuant to Rule 3.800, Florida Rules of Criminal Procedure. (Ex. 007). On April 4, 2006, the trial court filed its order denying, in part, the motion to correct illegal sentence and directing a response from Respondent as to the remaining claims. (Ex. 008). Respondent filed its response on April 17, 2006. (Ex. 009). The court held a hearing on the remaining claims of the motion to correct illegal sentence on May 8, 2006. (Ex. 010).[3] The court held a resentencing hearing on May 15, 2006. (Ex. 011).

Petitioner filed a notice of appeal on June 12, 2006. (Ex. 012). Defense counsel filed an initial <u>Anders</u> brief with the Second District Court of Appeal on or about March 7, 2007. (Ex. 013). On April 18, 2007, the State filed its <u>Anders</u> answer brief. (Ex. 014). Petitioner filed his *pro se* initial brief on July 6, 2006. (Ex. 015). On September 21, 2007, the appellate court affirmed the decision *per curiam*. (Ex. 016). The mandate issued on October 12, 2007. (Ex. 017).

On April 20, 2007, Petitioner filed his motion for post-conviction relief, pursuant to Rule 3.850, Florida Rules of Criminal Procedure, raising twelve grounds. (Ex. 018). On July 13, 2007, the trial court ordered Respondent to respond to the claims, in part, and dismissed the remainder of the motion for post-conviction relief. (Ex. 019). On July 20, 2007, Respondent filed its response to the trial court's order. (Ex. 020). On July 25, 2007, Petitioner filed his motion to rehear and supplemental grounds for pending post-conviction motion. (Ex. 021). On June 3, 2008, the trial

---

[3] Respondent was unable to obtain a copy of the transcript for the Court.

court filed its order denying grounds two and nine of Petitioner's motion for post-conviction relief and motion to re-hear and supplemental grounds for pending post-conviction motion. (Ex. 022). On June 17, 2008, Petitioner filed a motion for rehearing. (Ex. 023). The trial court filed its order denying Petitioner's motion for rehearing on March 17, 2010. (Ex. 024).

Petitioner filed his notice of appeal to the Second District Court of Appeal on April 14, 2010. (Ex. 025). He then filed his *pro se* initial brief on April 15, 2010. (Ex. 026). Respondent filed its summary letter on May 21, 2010. (Ex. 027). On February 11, 2011, the appellate court filed its opinion affirming in part, reversing in part, and remanding for the trial court to strike the claim with leave to amend within a reasonable time. (Ex. 028). The mandate issued on March 2, 2011. (Ex. 029). Petitioner filed his amended motion for post-conviction relief with the trial court on May 3, 2011. (Ex. 030). On May 29, 2012, the court held an evidentiary hearing on Petitioner's Rule 3.850 motion. (Ex. 031). On June 27, 2012, the trial court denied claim twelve of the amended motion for post-conviction relief with an appendix containing the victim's deposition. (Ex. 032).

On September 10, 2012, Petitioner filed his petition for belated appeal along with his initial brief. (Ex. 33). Respondent filed its response to Petitioner's petition for belated appeal on March 13, 2013. (Ex. 34). The Second District Court of Appeal filed its Order granting Petitioner's petition for belated appeal on March 26, 2013, and its order served as Petitioner's notice of appeal. (Ex. 035). Petitioner filed his initial brief with the appellate court on June 19, 2013. (Ex. 036). Respondent filed its answer brief on October 7, 2013. (Ex. 037). Petitioner filed his reply brief on October 26, 2013. (Ex. 038).

On March 14, 2014, the Second District Court of Appeal affirmed *per curiam*. (Ex. 039). Petitioner filed his motion for rehearing and/or clarification on March 24, 2014. (Ex. 040). The

mandate issued on May 19, 2014. (Ex. 041).

## The AEDPA Standard of Review

Petitioner's federal petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Section 104 of the AEDPA amended 28 U.S.C. § 2254 by adding the following provision:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Section 2254, as amended by the AEDPA, establishes a highly deferential standard for reviewing state court judgments. *Parker v. Secretary, Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003) (citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)). Petitioner filed his petition for writ of habeas corpus after the enactment of the AEDPA and, thus, section 104 applies to his petition.

Review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1401 (2011). In addition, section 2254(e)(1) "provides for a highly deferential standard of

review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Having carefully considered the parties' submissions, the Court finds that Petitioner fails to meet his burden under the AEDPA standard inasmuch as the state court decisions on his claim were neither contrary to, nor an unreasonable application of, clearly established federal law.

## **Petitioner's Claim and the Standard of Review**

Petitioner raises a single ground for relief in his petition: that defense counsel, Jorge Chalela, failed to properly and adequately follow the prevailing standards for impeaching a witness. Under an AEDPA review of such claims, a petitioner must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984). The burden is on a petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 686-88. In order to establish an ineffective assistance of counsel claim, a petitioner must demonstrate: 1) deficient performance by counsel and 2) prejudice to the defense. *Id.* at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Sound tactical decisions within a range of reasonable professional competence are not vulnerable to collateral attack. *See, e.g., Weber v. Israel*, 730 F.2d 499, 508 (7th Cir.) (finding that choosing a defense is a matter of trial strategy), *cert. denied*, 469 U.S. 850 (1984); *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980), *cert. denied*, 450 U.S. 934 (1981). Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between. *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Petitioner's claim fails to satisfy the two-pronged test of *Strickland*.

## **Discussion**

The trial court held an evidentiary hearing on Petitioner's claim and then issued its order finding as follows:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the May 29, 2012 evidentiary hearing, the court file, and the record, the Court finds Mr. Chalela's testimony to be credible. Therefore, the Court finds after considering the alternative of impeaching the victim during the alleged portions of her trial testimony with page and line references to the deposition transcript or police report, Mr. Chalela made reasonable, strategic decisions not to impeach the victim with her deposition transcripts or her statements to the police for several reasons, including either the victim did not deny the specific statement, she testified consistent with her deposition testimony or police report, he was able to impeach her with the alleged inconsistencies without specifically referencing the page and line numbers in the deposition transcript or the specific statement to the police, he wanted to make his points and keep flowing so as to not interrupt the flow of the case, had a fear of losing credibility with the jury if he tried to impeach her on minor, irrelevant details, chose not to impeach her when she testified favorably for the defense, and it would have been counterproductive for Defendant. [] Consequently, the Court finds Defendant cannot demonstrate that Mr. Chalela was ineffective. <u>Occhicone v. State</u>, 788 So. 2d 1037, 1048 (Fla. 2000)(holding "strategic decisions do not constitute ineffective assistance of counsel if alternative course have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.")

(Ex. 032, R. 149).

The trial court properly denied the claim as there was no evidence of deficient performance by Mr. Chalela. As Respondent argues, at the evidentiary hearing, Mr. Chalela testified that his trial strategy was to highlight the victim's inconsistencies. He further testified:

> That was going to be my theme was the inconsistencies. And I start out talking about how she coincidently guessed that he was exactly 23 years old and that he weighed 175 pounds, and that crime victims -- one would rationally expect crime

-6-

victims to make estimates; early twenties about a buck fifty, maybe two hundred pounds. But this -- one of the signs that I was alleging she wasn't to be believed or wasn't believable about him being a stranger and nonconsensual sex was that she coincidently guessed exactly his age and exactly his weight.

(Ex. 031, R. 190, 192-199, 204-207, 211-212, 218-219, 222-227, 231-232, 234-252, 255-283; Ex. 032, R. 147).

Mr. Chalela also testified that he was thoroughly familiar with the proper procedure for using prior deposition transcripts for impeachment purposes. He testified that he stays current with impeachment procedures. (Ex. 031, R. 184-185). Mr. Chalela explained that he could not impeach the victim with her prior deposition testimony because she never testified inconsistently with that prior testimony. Mr. Chalela correctly stated that he can only bring in extrinsic evidence of a prior inconsistent statement if he first gives the witness an opportunity to admit or deny the prior inconsistent statement. Thus, defense counsel never had an opportunity to impeach her because the victim did not ever actually deny anything in a prior inconsistent statement, and counsel then is not allowed to bring in extrinsic evidence. (Ex. 031, R. 189).

With regard to Petitioner's allegation that defense counsel failed to lay a proper foundation for impeachment and was forced to move on after several admonishments from the trial court, Mr. Chalela testified:

> …A lawyer should only be asking a question if there's something to be gained by the question. So, what -- the only reason why I'm up there talking to [the victim] is hopefully to try to bring out my points and move on as quickly as I can. Now, she was crying the whole time. She was sobbing and crying, apparently genuinely so, and she was a petite, pretty girl.
>
> This is something that's very tricky for the experienced practitioner to handle in that if you're going to try to make points you don't want to start a situation of the victim essentially poking fun of the points that you're making and putting roadblocks in the way. So, I have this flow going with the victim, which is something that is caught at trial -- seven hours and everything else. You want to have a flow going

> with the victim so that they just start agreeing with all the points that you're making. I was playing a little fast and loose with the formality of it. And I got away with it because the State wasn't objecting. Judge Padgett, being the super experienced juris [sic] that he is - - at this point, I'm getting a little too fast and loose and so then he slows it down and puts the roadblock in there. That's what he's doing. Because I am being a little fast and loose, but I was being a little fast and loose to the benefit of Todd instead of giving the victim an opportunity to slow down and start contesting things. And, in fact, in this cross examination, (1) will see that [the victim] at one point starts to get a little hostile with me and say, "Look, you need to check your paperwork. I don't know where you're coming from;" that type of thing…

(Ex. 031, R. 187-188).

When asked if he believed that it is far more effective, dramatic and impressionable to a jury when you impeach with deposition testimony following the proper procedure, *i.e.*, reference to page and line number, defense counsel testified that he thought it was not. Mr. Chalela testified that he has a tremendous amount of experience with handling trials and had used set impeachment procedures in many trials, but chose strategically not to proceed that way with this witness in this trial. (Ex. 031, R. 189-190, 195-197).

Petitioner's claim boils down to one of disagreement with trial counsel's choice as to strategy. However,

> [a] claimant is not entitled to relief if the claim of ineffectiveness merely expresses disagreement with counsel's strategy. [] Counsel's strategic decisions will not be second-guessed on collateral attack. [] Strategic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. []

*Jones v. Secretary, Dept. of Corr.*, 2011 WL 5420816, at *7 (M.D. Fla. Nov. 9, 2011) (unpublished). Petitioner has the burden of proving that counsel's approach "would have been used by no professionally competent counsel." *Id.* at *8 (quoting *State v. Williams*, 797 So. 2d 1235, 1239 (Fla. 2001)); *Darling v. State*, 966 So. 2d 366, 382 (Fla. 2007). The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Putman v. Head*, 268 F.3d

1223, 1244 (11th Cir. 2001) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)).

Because counsel's decision to not follow the "proper procedure" for impeaching a witness was a strategic, reasonable decision, counsel cannot be deemed ineffective. Mr. Chalela contemplated alternative courses, but decided it was better to focus on the verifiable inconsistent statements and to control the flow of the questioning. *Graham v. Florida Atty. Gen.*, 2014 WL 2118877, at *5 (M.D. Fla. May 20, 2014) ("Perhaps defendant's post-conviction counsel would have tried the defendant's case differently, and perhaps he would have done more to impeach [the witness]. Perhaps five other criminal defense attorneys would have had five different trial strategies. That does not make any one of them ineffective under *Strickland*…"); *see also, Spann v. State*, 985 So. 2d 1059, 1068-69 (Fla. 2009).

The Court has independently examined the record in Petitioner's case and finds that it supports the trial court's factual findings and the reasonableness of its legal conclusion. Based upon this record, Petitioner fails to show that his attorney's alleged deficiency rendered the result of his trial unfair or unreliable. *Jones* 2011 WL 5420816, at *8*; *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (The prejudice component of *Strickland* focuses on the question of whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").

Perhaps more importantly, the ground fails scrutiny under *Strickland*'s prejudice prong. The prejudice prong is not established merely by a showing that the outcome of the proceeding would have been different had counsel's performance been better. Rather, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart*, 506 U.S. at 369. Here, the trial court found that Petitioner had failed to show how he was prejudiced

by Mr. Chalela's questioning of the victim. Petitioner suffered no prejudice from defense counsel's decision not to follow the proper procedure for impeaching a witness about prior deposition testimony. A petitioner for a writ of habeas corpus must show substantial deprivation in order to prevail on the petition. *St. John v. State of N.C. Parole Comm'n*, 764 F.Supp. 403 (W.D.N.C. 1991), *aff'd*, 953 F.2d 639 (W.D.N.C. 1992), *cert. denied,* __ U.S. __, 113 S.Ct. 80 (1992). In light of the physical evidence and witness testimony on direct examination, the trial and appellate courts reasonably concluded that the results of the trial would have been the same even if defense counsel questioned the victim about her deposition testimony. Here, the state court decisions were neither contrary to, nor an unreasonable application of, clearly established federal law.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** is directed to enter judgment in favor of Respondent, terminate any pending motions, and close this case.

Additionally, the Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court allow Petitioner to proceed on appeal *in forma pauperis* because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). Instead, he will be required to pay the full amount of the appellate filing fee pursuant to 28 U.S.C. §§ 1915(b)(1) and (2).

**DONE AND ORDERED** at Tampa, Florida, on May 30, 2017.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

C<span style="font-variant:small-caps">opies to</span>: *Pro se* Petitioner; Counsel of Record